In the Matter of WALTER LAZAREK et al., Appellants, v COUNTY LEGISLATURE OF THE COUNTY OF OSWEGO et al., Respondents.

Fourth Department, July 18, 1975

*Doren P. Norfleet* for appellants.

*Robert J. Nicholson* for respondents.

MAHONEY, J. Petitioners ("City") in an article 78 proceeding appeal from judgment of Supreme Court, Oswego County, which, *inter alia,* dismissed their petition seeking invalidation of a real property tax apportioning resolution enacted by respondent Legislature (collectively referred to as the "County"), levying an additional 1975 county tax on properties located within the City of Oswego, to recover payment of the City's alleged proportionate share of certain costs incurred in the construction of a county nursing home facility. It is the City's contention that, by reason of the prior merger of the city and part-county social services departments and implementing resolutions of the respective legislative bodies in connection therewith, such tax apportioning resolution is invalid.

In addition, the City alleges invalidating procedural irregularity in the County Legislature's adoption of the apportioning resolution in failing to accord a public hearing on the specific apportioning issue, citing section 359 of the County Law. Preliminarily, such procedural irregularity contention is without merit. A public hearing was concededly held on the *tentative budget* in accordance with the requirement of section 359 of the County Law. Subdivision 1 of section 360 of the County Law expressly allows the revision of the tentative budget by the County Legislature after the public hearing required by section 359 of the County Law. Adoption of the revised budget and apportionment of the determined taxes to be .collected, then, becomes solely a question for the County Legislature (County Law, § 360, subds 2, 3).

Addressing attention to the remaining substantive issue concerning the validity of the tax apportioning resolution herein attacked, a chronological review of the operative facts will be helpful. Prior to January 1, 1972 the city maintained its own social services district and the county maintained a part-county social services district, which, excluding the City of Oswego, encompassed the remaining portion of the county. Also, prior to January 1, 1972, by resolution adopted on June 25, 1970, the county approved acquisition of a site for a "nursing and hospital related facility" with authorization extended to the Chairman of the then Board of Supervisors to execute on behalf of the county necessary documents to effect

establishment of such nursing and hospital bed related facility. Thereafter, by two resolutions adopted on March 8, 1971, the County Commissioner of Social Welfare Services was designated and authorized as agent for the county in connection with application to be made for construction cost Federal funding of such county nursing home facility. In addition, the sum of $100,000 was appropriated from the County's Capital Projects Program for preliminary work in connection with the erection of such county nursing home facility.

Concurrently during this period, as a result of apparent extended negotiations between the City and the County, pursuant to chapter 1121 of the Laws of 1971 as implemented by concurrent resolutions of the respective legislative bodies, the city and part-county social services districts were merged into a single county-wide district, effective January 1, 1972. While no specific reference was made in the concurring resolutions to the subject county nursing home facility, the City's resolution, adopted December 13, 1971, provided for the transfer by the City to the proposed County Social Services District of its: "1. physical assets, particularly consisting of fourteen (14) titles to real estate, title to which are presently held in the Social Services District of the City of Oswego and any other sundry claims arising out of services for which reimbursement may be owing, shall be assigned and transferred by the Social Services District of the City of Oswego to the Social Services District of the County of Oswego by transfer of titles and assignment of assets, claims and otherwise, shall be outright without any reimbursement to the City of Oswego." In addition, the City's resolution recited as part of the *quid pro quo:* "2. That all assets of the former part-county Social Services District and particularly consisting in part of titles to approximately sixty (60) parcels of real estate to which are presently held in the name of the Social Services District of the County of Oswego, shall become the assets and credits of the newly established Social Services District of the County of Oswego."

It was further provided under the City's resolution: "That pursuant to the levy of tax for the fiscal year commencing January 1, 1972, the City of Oswego will begin paying its ad valorem share of the cost of all public assistance and care granted by the Social Services District of the County of Oswego."

The County's concurrent resolution, adopted on December 16, 1971, contained identical verbiage with the exception of

the paragraph relative to the transfer obligation of assets of the part-county social services district, being: "All assets of the former part-County Social Services District shall become assets and credits of the newly established Social Services District of the County of Oswego *without any claim of apportionment of values thereof against the City of Oswego."* (Emphasis added.)

Following the merger on January 1, 1972 of the city and county social services district, title to the property upon which the subject nursing home facility was to be constructed was acquired in the name of the county by deed dated April 7, 1972. Construction contracts were thereafter let by the county, followed by completion of the facility at a total cost of $2,301,212.87, of which amount $335,520 was paid from State funding, with the balance being paid by the County's initial Capital Projects Program financing resolution of $100,000 and $1,863,692.87 from the transfer of the surplus balance remaining in the part-county social services district funds at the date of merger of the two social services districts.

Apparently bearing upon the motivation in the enactment of the tax apportioning resolution here in issue was an audit report prepared by the State Department of Audit and Control wherein it was observed: "At December 31, 1970 the part-county social services fund had a balance in the amount of $1,767,072.17. In view of the fact that, as of January 1, 1972, the City of Oswego social services district and the Oswego part-county social services district will consolidate, care should be taken to insure that this fund balance is used for the benefit of the taxpayers within the part-county district."

Thereafter, on November 26, 1974 the subject tax apportioning resolution was adopted by the County. Under the provisions thereof the 74.4%–25.6% relation between county and city property tax apportionment was applied to the aforesaid surplus fund balance amount of $1,863,692.87, with resulting apportionment to the city property owners of their alleged share in the corrected amount of $477,617.37.

On the foregoing record, a hearing having been waived by stipulation of the parties, Special Term dismissed the petition.

We conclude that such order of dismissal was in error. The merger of the social services districts herein was effectuated through the enabling legislation under chapter 1121 of the Laws of 1971, and by the concurrent resolutions of the City and County legislative bodies. Section 2 of said chapter 1121 is

essentially a transfer provision providing a mechanism for achieving the merger. The mechanism therein provided is by contractual agreement between the two municipalities, with the City being authorized to convey to the County "any real or personal property or assigned assets * * * without consideration, or for such consideration upon such terms and conditions as may be mutually agreed upon". (L. 1971, ch. 1121, § 2.) The concurrent resolutions of the two respective legislatures in pursuance thereof evidenced such an agreement. The relevant terms of said agreement are: (a) the City conveyed "all physical assets" held by the City Social Services District to the new all-county district without reimbursement from the County; (b) the City promised to pay its ad valorem share of "the cost of all public assistance and care" granted by the new all-county social services district for 1972 and thereafter; and (c) the County conveyed "all assets" of the former part-county social services district to the new all-county social services district *"without any claim of apportionment of values thereof against the City."* (Emphasis added.) At the time of said merger a substantial asset of the part-county social services district was $1,863,692.87 in surplus funds. It was those surplus funds which the County used to complete the financing of the construction costs of the subject nursing home facility for which the County, by its tax apportioning resolution here under attack, sought proportionate recovery from the City. However, as hereinbefore noted, by the County's concurrent merger resolution of 1971 the County had agreed that the County would not apportion against the City the value of the part-County district's "assets" so transferred, i.e., the aforementioned surplus funds. The County's instant tax apportioning resolution of 1974, is, therefore, contrary to its concurrent merger resolution and violative of its contractual obligation entered into with the City; and this cannot be countenanced. Municipalities are not beyond the law in observance of valid contractual obligations freely entered into, and public interest requires their conformance. The County herein may not avoid its own prior resolution, where intervening contractual rights and obligations accrue and, by subsequent resolution, do that which it expressly promised not to do.

As to the validity of the admonition and recommendation of the State Department of Audit and Control concerning the disposition of the fund balance at the time of merger of the two social services districts, such issue is not presently before

us in this proceeding, nor is any expression of opinion thereon to be inferred from our disposition in this case.

Having concluded that on general principles of contract law the County's tax apportioning resolution is invalid, there remains the procedural propriety of this court's ultimate disposition of the instant controversy in this article 78 CPLR proceeding. While taxation is generally a function of the legislative branch of government, normally not subject to review in an article 78 proceeding *(People ex rel. Trustees of Vil. of Jamaica v Board of Supervisors of Queens County,* 131 NY 468; *Matter of Du Bois v Town Board of Town of New Paltz,* 43 AD2d 606; *People ex rel. Allen v Board of Supervisors of County of Westchester* 113 App Div 773), the Court of Appeals has, nevertheless, held that "action of a board of supervisors of a county in determining the amount to be raised by taxation and apportioning the same among the towns of the county is quasi-judicial and can be reviewed by certiorari * * *. But such review will be allowed only in exceptional cases, in which the public interests may be jeopardized." *(People ex rel. Toms v Board of Supervisors,* 199 NY 150, 154; cf. *People ex rel. Town of Candor v Board of Supervisors,* 204 App Div 703.)* Notwithstanding such expression of procedural propriety in exceptional cases warranting judicial review of matters of taxation, and to avoid unintended precedential authority in expansion of normal judicial review in an article 78 proceeding, this court, having jurisdiction of the parties, elects to exercise conversion authority under CPLR 103 (subd [c]) and treat the instant proceeding as an action for declaratory judgment. In accordance with our foregoing observations, the judgment herein appealed from is reversed and the tax apportioning resolution of the County adopted November 26, 1974 is determined to be null and void; with the further direction to the appropriate parties to provide for proper adjustment in crediting any taxes collected thereunder.

MARSH, P. J., MOULE, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously reversed on the law and facts without costs and judgment entered in favor of petitioners in accordance with opinion by MAHONEY, J.